# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

STEVEN LEE VANZANT,

        Petitioner,

v.                                             Case No. 20-CV-005-JFH-DES

DAVID ROGERS,[1]

        Respondent.

## OPINION AND ORDER

Petitioner Steven Lee Vanzant ("Petitioner"), a state prisoner appearing *pro se*,[2] brings this action pursuant to 28 U.S.C. § 2254, seeking federal habeas relief from the judgment entered against him in the District Court of McIntosh County, Case No. CF-2013-226. Dkt. No. 1; Dkt. No. 12. Respondent David Rogers ("Respondent") has filed a response [Dkt. No. 25] in opposition to the petition, as well as the state-court record [Dkt. No. 26]. Having considered the parties' arguments and the relevant record, the Court denies the petition.

## I.   BACKGROUND

Vanzant was convicted in 2016 on one count of murder in the first degree, in violation of Okla. Stat. tit. 21, § 701.7, and was sentenced to life imprisonment without the possibility of parole.

---

[1] Vanzant presently is incarcerated at the Joseph Harp Correctional Center, in Lexington, Oklahoma. The Court therefore substitutes Joseph Harp Correctional Center's current warden, David Rogers, in the place of Scott Crow, as party respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.

[2] Because Vanzant appears without counsel, the Court must liberally construe his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the rule of liberal construction neither requires nor permits the Court to act as an advocate on his behalf by crafting legal arguments or scouring the record for facts to support his claims. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Dkt. No. 26-37 at 38.[3]  Vanzant directly appealed his judgment and sentence to the Oklahoma Court of Criminal Appeals (OCCA), which affirmed the judgment and sentence on February 1, 2018.  Dkt. No. 25-1.  He then sought postconviction relief in the state district court, alleging that his appellate counsel's omission of multiple meritorious claims on direct appeal constituted ineffective assistance of appellate counsel under the Sixth Amendment.   Dkt. No. 25-10.  The state district court denied Vanzant's application on March 21, 2019.  Dkt. No. 25-13.  Vanzant appealed the decision to the OCCA, which affirmed the district court's denial of relief.  Dkt. No. 25-16.

In its opinion affirming Vanzant's conviction and sentence on direct appeal, the OCCA supplied the following recitation of facts.  The Court presumes the OCCA's determinations of factual issues to be correct, absent clear and convincing evidence "rebutting the presumption of correctness."  28 U.S.C. § 2254(e)(1).

> On August 14, 2012, Deborah Kelsoe was murdered in her rural McIntosh County home that she had shared for years with Appellant Vanzant.  The killer shot her once in the head, ransacked her belongings and set fires with multiple points of origin throughout the home to conceal the crime.  College students, driving home after fishing at Lake Eufaula, saw the flames and reported the blaze around 3:15 a.m.  Both fire and police responded, as well as Kelsoe's two sisters and brother-in-law, who lived on the adjoining properties.  Because neither Kelsoe's Ford Bronco nor Vanzant's flatbed truck were parked at the house, the authorities and Kelsoe's family first believed they were not home.  During the fire suppression efforts, however, firefighters found Kelsoe's body in her bed.
>
> The contested issue at trial was whether Vanzant caused Kelsoe's death.  The prosecution sought to prove that Vanzant drove in the middle of the night from his brother's place in Welty, Oklahoma to Kelsoe's home and killed her for the inheritance because he was the sole beneficiary under her will.  He then drove back to his brother's home where he received phone calls with the news of Kelsoe's murder.  According to the prosecution, Vanzant left his phone at his brother's place so any records of phone activity would show the phone's location in the Welty area.

---

[3] The Court's citations refer to the CM/ECF header pagination.

Vanzant maintained his innocence and insisted that he was at his brother's place the night of Kelsoe's murder. To rebut the State's evidence against him, the defense offered an alternative suspect, namely Ike Webster, who was married to Kelsoe's sister, Patty Webster. According to Vanzant, financial gain was the motive as Kelsoe's two sisters received half a million dollars each from a life insurance policy after Kelsoe's death.

To support his theory, Vanzant hired an arson investigator to refute the prosecution's evidence about the origin and cause of the fire that burned Kelsoe's head. The prosecution presented Michael Tubbs, an agent with the Oklahoma State Fire Marshal, who concluded that the fire that burned Kelsoe's head was the result of flashover in the bedroom rather than a separate fire. This second fire ignited after the initial fire had been "knocked down" and fans had been set up to clear the smoke. Tubbs concluded that Kelsoe's head was not the point of origin for that blaze.

The defense expert disagreed and found that the fires in Kelsoe's bedroom had two points of origin, specifically the first one in the closet and the second one on her head. The photographs, he claimed, proved that the fire that burned Kelsoe's head was not the result of flashover but was instead set by someone. Vanzant insisted that the defense expert established his innocence because the expert's scene analysis showed Kelsoe's head was set ablaze intentionally by someone when he was not at the scene. Vanzant reasoned it must have been Ike Webster, who was one of the first at the scene, was familiar with fires as a member of the volunteer fire department and who had motive.

Dkt. No. 25-1, at 2-7.

Vanzant initiated this federal habeas action on January 6, 2020, raising claims of ineffective assistance of appellate counsel ("Ground 1"), ineffective assistance of trial counsel ("Ground 2"), prosecutorial misconduct ("Ground 3"), cumulative error ("Ground 4"), and insufficient evidence ("Ground 5"). Dkt. No. 1; Dkt. No. 12. Respondent contends that, apart from one prosecutorial misconduct subclaim, Grounds 2 and 3 are procedurally barred or subject to an anticipatory procedural bar precluding the Court's review. Dkt. No. 25, at 23, 60. With respect to Grounds 1, 4, and 5, and the exhausted prosecutorial misconduct subclaim, Respondent argues that Vanzant has failed to demonstrate entitlement to relief under the deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Id.* at 13, 60-61, 97, 104.

## II.     LEGAL STANDARD

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted). When a claim has been "adjudicated on the merits in State court proceedings," federal habeas relief may be granted under the AEDPA only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alteration and internal quotation marks omitted). A state-court decision is "contrary to" clearly established federal law if the conclusion is "opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (alterations and internal quotation marks omitted). A state-court decision is an "unreasonable application" of clearly established federal law if the "state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (alteration and internal quotation marks omitted). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico*, 559 U.S. at 773 (citations and internal quotation marks omitted) (emphasis in original).

Further, a state-court's "determination of a factual issue . . . shall be presumed to be correct," unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.   DISCUSSION

### A.   Ground 1: Ineffective Assistance of Appellate Counsel

Vanzant argues in Gound 1 that his appellate counsel was ineffective for failing to raise on direct appeal certain meritorious claims of ineffective assistance of trial counsel and prosecutorial misconduct.  Dkt. No. 1 at 5; Dkt. No. 12 at 2-3.  Claims of ineffective assistance of counsel are analyzed under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  The petitioner must first demonstrate that counsel's performance was deficient, which requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.   The petitioner must then demonstrate that "the deficient performance prejudiced the defense." *Id.* at 687.  To establish prejudice, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  When, however, a petitioner seeks habeas relief on a claim of ineffective assistance of counsel under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted).

"When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, [courts] must look to the merits of the omitted issue." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).  "[A]ppellate counsel who files a merits brief need not (and should not) raise

every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Thus, it is insufficient for a petitioner to show merely that counsel failed to raise a nonfrivolous or potentially meritorious claim. Rather, the omission "may directly establish deficient performance" if the omitted issue "is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). "[I]f the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission." *Id.* Of course, if the omitted issue is without merit, then its omission does not constitute deficient performance, nor was counsel's failure to raise the issue prejudicial. *See Cargle*, 317 F.3d at 1202; *Orange*, 447 F.3d at 797.

Vanzant first raised his claim of ineffective assistance of appellate counsel in his application for postconviction relief. Dkt. No. 25-10 at 2-6. In affirming the state district court's denial of relief, the OCCA determined that Vanzant had demonstrated neither deficient performance nor prejudice:

> Petitioner's claim of ineffective assistance of appellate counsel could not have been raised in his direct appeal. 22 O.S.2011, § 1086; *Logan*, 2013 OK CR 2 at ¶ 5, 293 P.3d at 973. Petitioner claims that his appellate counsel was ineffective for failing to raise on direct appeal all of the propositions asserted in this post-conviction proceeding. Petitioner argues such ineffectiveness provides sufficient reason to allow the propositions to be the basis of his application.
>
> In order to establish a claim of ineffective appellate counsel, Petitioner must show both: (1) deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for appellate counsel's unprofessional error, the result of his appeal was unreliable or fundamentally unfair. *Logan*, 2013 OK CR 2 at ¶ 5, 293 P.3d at 973 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We begin by noting Petitioner

6

has not established that his appellate counsel's conduct was objectively unreasonable. *Id.* We also find Petitioner has not established that the result of his direct appeal, or his trial, would have been different. *Id.* We agree with the District Court that Petitioner's self-serving assertions are not sufficient to establish that the outcomes of his trial and appeal would have been different. Petitioner's post-conviction pleadings do not analyze or even address all of the direct and circumstantial evidence used by his jury to convict him beyond a reasonable doubt and to sentence him to life imprisonment without the possibility of parole. He has thus not shown that the issues allegedly mishandled by his appellate counsel would have overcome the evidence used by his jury or would have changed the result of his direct appeal.

Dkt. No. 25-16 at 3-4.

Vanzant is entitled to habeas relief on his claim only if he demonstrates that the OCCA's decision was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254. Vanzant presents no argument suggesting the OCCA unreasonably determined the facts in light of the evidence in his case, and the OCCA's decision clearly reflects that the state court applied the correct legal standards in its adjudication. As to the remaining inquiry, whether the OCCA's application of *Strickland* was reasonable, the Court agrees with the OCCA that the issues Vanzant faults his appellate counsel for omitting on direct appeal cannot support a finding of deficient performance or prejudice under *Strickland*. The Court addresses each in turn.

**1. Trial Counsel's Failure to Advise Petitioner to Testify**

Vanzant faults his trial counsel for advising him not to testify on his own behalf at trial.[4]

---

[4] There is no indication in the record that counsel prevented Vanzant from testifying. To the contrary, the trial transcript reflects that Vanzant acknowledged to the trial court that his right to testify had been explained to him and that he was certain of his decision. *See* Dkt. No. 26-24 at 211 (Vanzant advising trial court that he was "[o]ne hundred percent" sure of his decision not to testify and that there was no "question in [his] mind"); *see also Aragon v. Tafoya*, 42 F. App'x 255, 257 (10th Cir. 2002) ("'[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.'" (quoting *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992))).

Dkt. No. 12 at 2, 8; Dkt. No. 25-10 at 6-8.  Vanzant claims his counsel advised him not to testify because counsel "did not want to open any doors for the [prosecutor]" and did not think Vanzant had "the mentality for the line of questioning that [the] very seasoned and experience[d] [prosecutor] would put [him] through."  Dkt. No. 12 at 8.  Vanzant fails to show that these considerations were unreasonable.  Given the strength of the State's evidence against Vanzant, it was logical for counsel to assume that any benefit of Vanzant's testimony would be outweighed by the damaging effect of cross-examination.  *See Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"); *Cummings v. Sirmons*, 506 F.3d 1211, 1230 (10th Cir. 2007) (rejecting argument that trial counsel erroneously advised the defendant not to testify where "it prevented [the defendant] from being subjected to what undoubtedly would have been damaging cross-examination by the prosecution").

Further, Vanzant's conclusory assertion that the absence of his testimony "adversely affected the tr[ia]l outcome" is insufficient to demonstrate that the result of the trial would have been different had he testified.  Dkt. No. 12 at 2; *see Strickland*, 466 U.S. at 694 (explaining that, to demonstrate prejudice, the petitioner must show a "reasonable probability" that "the result of the proceeding would have been different," but for counsel's errors).  Vanzant does not explain how his testimony would have rebutted the significant evidence of his guilt or how he would have persuaded the jury of his innocence despite this evidence.  *See infra* Section III(E) (discussing evidence supporting Vanzant's guilt); *United States v. Rantz*, 862 F.2d 808, 811 (10th Cir. 1988) ("Because of the amount of evidence against the petitioner, this court cannot conclude that there is a reasonable probability that the result of the case would have been different had counsel

permitted petitioner to testify."); *Cummings*, 506 F.3d at 1230 ("[W]e are unable to conclude, in light of the strong evidence of [petitioner's] guilt presented by the prosecution, that the jury could reasonably have found [petitioner's] assertions of innocence believable.").

### 2.   Trial Counsel's Failure to Call Mr. Sean Lemley as a Witness

Vanzant next argues trial counsel was ineffective for failing to call Mr. Sean Lemley as a defense witness at trial.  Dkt. No. 12 at 2, 9; Dkt. No. 25-10 at 8-9.  Lemley testified on behalf of the State at Vanzant's preliminary hearing, claiming Vanzant had confessed to him while they both were in McIntosh County Jail.  Dkt. No. 26-3 at 164, 168-70.  Vanzant contends that Lemley "ma[d]e a deal with the state in exchange for his testimony," and that trial counsel should have "call[ed] Mr. Leml[e]y as a defense witness to show the State was obtaining false testimonies to convict [him]."   Dkt. No. 1 at 14; Dkt. No. 12 at 9.

The record reflects that the State intended to call Lemley as a witness at trial but could not locate him, despite several unsuccessful attempts by law enforcement.  Dkt. No. 26-36 at 25-27. Clearly, Vanzant's counsel did not act deficiently in failing to call an unavailable witness.  Further, Vanzant does not explain how Lemley's absence prejudiced him at trial.  It does not appear that the jury was made aware of Lemley's alleged confession, so his presence at trial was unnecessary for impeachment purposes.  Even if counsel could have elicited testimony from Lemley regarding a "deal with the state," counsel reasonably could have concluded that the benefit of such testimony would be grossly outweighed by the damage of introducing evidence of a confession in the first place.  Accordingly, Vanzant has shown neither deficient performance nor resulting prejudice.  *See Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

### 3.   Trial Counsel's Failure to Seek Dismissal of Information

Vanzant contends that trial counsel was ineffective for failing to file a motion to dismiss his case for lack of subject matter jurisdiction, "based on the complaint information sheet being unverified." Dkt. No. 12 at 2; Dkt. No. 25-10 at 17.  Vanzant raised this argument in his application for postconviction relief, citing Article II, Section 17 of the Oklahoma Constitution.  Dkt. No. 25-10 at 15-17.  The OCCA rejected the argument:

> Petitioner makes one argument that the District Court lacked subject matter jurisdiction in Case No. CF-2013-226 because his Information was not verified.  In support of this argument, Petitioner cites a portion of Article II, Section 17 of the Oklahoma Constitution, which states "[p]rosecutions may be instituted in courts not of record upon a duly verified complaint."  Okla. Const. Art[.] II, § 17.  Petitioner's Information was verified.  22 O.S.2011, § 303.  Moreover, the District Court is a court of record. Okla. Const. Art. VII, § 7.  Petitioner's jurisdictional argument is wholly without merit.  This Court cannot find any sufficient reason to allow his grounds for relief to be the basis of his application for post-conviction relief. 22 O.S.2011, § 1086; *Logan*, *supra*.

Dkt. No. 25-16 at 4-5.

The OCCA determined that the Information had been verified, and Vanzant provides no argument or evidence rebutting the presumption of correctness afforded the OCCA's factual finding under the AEDPA.  *See* 28 U.S.C. § 2254(e)(1).   The record reflects that both the Information and the Amended Information were supported by an "Affidavit for Issuance of Arrest Warrant" signed and sworn by Detective Dewayne Hall.  *See* Dkt. No. 26-33, at 13-21, 55-64. Further, because Vanzant's jurisdictional argument relies on Oklahoma law, the Court is bound by the OCCA's interpretation of that law and its determination that the cited state constitutional provision was inapplicable to Vanzant's case.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Williams v. Trammell*, 782 F.3d 1184, 1195 (10th Cir. 2015).  Because Vanzant's jurisdictional argument is without merit,

Vanzant has not shown that trial counsel was ineffective for failing to seek dismissal on that basis.

### 4. Trial Counsel's Failure to Admit Interview Recording

Vanzant also faults trial counsel for their failure to admit into evidence a recording of an interview conducted by Detective Hall with Vanzant on the morning of the crime. Dkt. No. 12 at 2; Dkt. No. 25-10 at 19-20. Vanzant claims there were numerous inconsistencies between Hall's testimony and the interview and counsel should have introduced the interview as impeachment evidence. Dkt. No. 25-10 at 19-20. The record reflects, however, that counsel did admit and play for the jury the interview recording for the purpose of revealing "prior inconsistent statements" "contradict[ing] the testimony of the officer." Dkt. No. 26-16 at 74-77, 91. Accordingly, Vanzant's argument lacks merit.

### 5. Trial Counsel's Failure to Interview Potential Witnesses

Next, Vanzant argues that trial counsel was ineffective for failing to identify and interview Kelsoe's neighbor who appeared at the scene during the fire. Dkt. No. 12 at 2, 10; Dkt. No. 25-10 at 20-21. At trial, two of the college students who first spotted the fire testified that a man in his fifties came to the scene about six or seven minutes after they arrived and spoke with the police officer. Dkt. No. 26-15 at 12-13, 15; Dkt. No. 26-24 at 175-76. One student testified that the man stated he "knew the people that lived [in the house]," and that "so-and-so was out of town." Dkt. No. 26-24 at 176. Further testimony suggests that this individual was likely Ike Webster, Kelsoe's brother-in-law. Officer Richard Beaty, the first officer at the scene, testified that Webster arrived shortly after him and told Beaty that the home belonged to his sister-in-law. Dkt. No. 26-24 at 184-85. Ike Webster also testified at trial, explaining that he was associated with the Checotah Volunteer Fire Department and, as such, had a fire pager that woke him up and alerted him to the fire. Dkt. No. 26-21 at 105-06. Webster radioed the fire department and got directions to the

11

scene.  *Id.* at 106.  He testified that, once there, he spoke with the officer at the scene.  *Id.* at 107.

Vanzant fails to point to any evidence suggesting that the neighbor he faults his counsel for not identifying was someone other than Webster.  As such, there is no indication that counsel failed to identify the neighbor, and Vanzant has not shown deficient performance on this basis.

### 6. Trial Counsel's Failure to Object to Prosecutor's Closing Arguments

Vanzant next faults his trial counsel for not objecting to the prosecutor's statements during closing arguments that:  (1) Vanzant "had been riding around with 'brain matter and blood' on his clothing;" (2) Vanzant had "pried [the] victim's fingers from her outstretched arm in order to take her ring;" and (3) Vanzant "had a motive for killing the victim" because he "knew beforehand the contents of the victim's [w]ill."  Dkt. No. 12 at 2-3; Dkt. No. 25-10 at 10-15, 17-18.  Vanzant contends the statements were prejudicial and unsupported by the evidence.  Dkt. No. 12 at 2-3; Dkt. No. 25-10 at 10-15, 17-18.  "The cardinal rule of closing argument[s]" is that "counsel must confine comments to evidence in the record and to reasonable inferences from that evidence." *Whittenburg v. Werner Enter. Inc.*, 561 F.3d 1122, 1128-29 (10th Cir. 2009).  Counsel, however, is "entitled to a reasonable amount of latitude in drawing inferences from the evidence during closing arguments," and the arguments "may be forceful, colorful, or dramatic, without constituting reversible error."  *United States v. Hammers*, 942 F.3d 1001, 1016 (10th Cir. 2019) (internal quotation marks omitted); *Whittenburg*, 561 F.3d at 1133 (internal quotation marks omitted).

At trial, a deputy sheriff who observed Kelsoe's body at the crime scene testified that Kelsoe's gunshot wound "had a small amount of blood, and the blood appeared to be brain matter coming out."  Dkt. No. 26-15 at 34.  Evidence also was presented that Vanzant changed his pants at a Love's Country Store just prior to heading to the scene of the fire.  When confronted about

this incident by law enforcement, Vanzant claimed that he had intestinal issues and had soiled his pants.  Dkt. No. 26-19 at 120.  In her closing arguments, the prosecutor pointed to Vanzant's own conflicting statements about his intestinal issues and to the testimony of Vanzant's brother, who had driven Vanzant to the Love's Country Store, that Vanzant did not "indicate to [him] that he was in some sort of emergency situation to go to the bathroom."  Dkt. No. 26-20 at 55-56; Dkt. No. 26-25 at 24-25.  The prosecutor stated, "So what he was telling [law enforcement] was he changed pants when he went into Love's because he had an accident.  Did he or did he look down and realize he had some of Debbie Kelsoe's brain matter and blood spatter on him?"  Dkt. No. 26-25 at 25.  This argument is a reasonable conclusion derived from the evidence.  It easily can be inferred that a gunshot wound producing blood and brain matter on the victim might also cause those substances to spatter on the shooter's clothing.

Evidence also supported the prosecutor's argument that Vanzant took Kelsoe's ring. Testimony was provided that Kelsoe rarely took the ring off and that she was seen wearing the ring the afternoon before her murder.  Dkt. No. 26-22 at 20-22, 71; Dkt. No. 26-23 at 164-65. When Kelsoe's body was discovered, it was positioned with her right arm extended "upside down on the nightstand next to the bed" with her palm facing upward.  Dkt. No. 26-15 at 87, 220. Vanzant produced the ring to law enforcement two months later, claiming to have found it in his boat.  Dkt. No. 26-23 at 130.  In her closing argument, the prosecutor stated, "And remember how [Kelsoe] was laying in the bed, with her arm stretched out like that.  Even [the defense expert] said that was possible.  Sure it could have been somebody pulled something off her hand, exactly what this defendant did."  Dkt. No. 26-25 at 64.  Based on the evidence, the Court cannot conclude that the prosecutor's comment was improper.  The prosecutor fairly inferred from the evidence that Vanzant removed the ring from Kelsoe's finger.

The prosecutor's comment that Vanzant "knew he was going to take everything of [sic] her estate upon her death" also is a rational conclusion derived from the evidence. Dkt. No. 26-25 at 59. At trial, testimony was heard that Vanzant requested that a lockbox within Kelsoe's home be opened because he believed his passport, social security card, and car titles were inside. Dkt. No. 26-21 at 121-22; Dkt. No. 26-22 at 50-53. When the lockbox was opened, however, Vanzant retrieved Kelsoe's will, as well as his own. Dkt. No. 26-21 at 122; Dkt. No. 26-22 at 52. Vanzant's passport, social security card, and car titles were later found by his daughter at a different residence. Dkt. No. 26-21 at 21. This evidence supports a finding that Vanzant was aware of the will's contents. The Court also notes that the OCCA made the factual finding on direct appeal that "Vanzant knew he was the sole beneficiary under Kelsoe's will." Dkt. No. 25-1 at 6. Vanzant fails to provide "clear and convincing evidence" rebutting the presumption that the OCCA's factual finding is correct. 28 U.S.C. § 2254(e)(1).

### 7. Prosecutorial Misconduct During Closing Arguments

Vanzant contends that the prosecutor improperly stated during closing arguments that "defense failed to prove another person committed the crime," which shifted the burden of proof to the defense. Dkt. No. 12 at 3. Though Vanzant included this issue as a claim he believes appellate counsel omitted from direct appeal, the claim was in fact presented to, and rejected by, the OCCA on direct appeal. Dkt. No. 25-2 at 30-33; Dkt. No. 25-1 at 8-11. Accordingly, Vanzant cannot demonstrate ineffective assistance of appellate counsel for its alleged omission.

### 8. Insufficient Evidence

Vanzant argues that the case against him was circumstantial, that the videos presented to the jury were "grainy or blurry" and that the "time frames" suggested by the State were "questionable." Dkt. No. 12 at 3. Here, again, Vanzant does not present an argument that was

omitted from his direct appeal.  Appellate counsel raised a detailed claim of insufficient evidence, in which counsel argued that the case was "purely circumstantial," described camera evidence as "blurry," and questioned the State's timeline of events.  Dkt. No. 25-2 at 15-30.  The OCCA considered and rejected the claim on the merits.  Dkt. No. 25-1 at 4-8.  Vanzant, therefore, has failed to show there was an omission of the claim.

In sum, the Court rejects Vanzant's claim of ineffective assistance of appellate counsel. Vanzant's proposed claims either were presented on direct appeal or lack merit, and Vanzant therefore has not shown that appellate counsel acted deficiently or that the OCCA unreasonably applied *Strickland* in its adjudication of the claim.  *See Miller v. Mullin*, 354 F.3d 1288, 1298-99 (10th Cir. 2004).

### B.  Ground 2: Ineffective Assistance of Trial Counsel

In Ground 2, Vanzant submits that he received ineffective assistance of trial counsel in several respects.  Dkt. No. 1 at 6, 14.  He contends trial counsel:  (1) misadvised him not to testify on his own behalf; (2) failed to seek dismissal of the Information based upon its alleged lack of verification; (3) failed to object to prosecutorial misconduct; (4) failed to admit the recording of Vanzant's interview with Detective Hall; (5) failed to interview Kelsoe's neighbor; and (6) failed to call Mr. Sean Lemley as a witness.  Dkt. No. 1 at 14.

Respondent raises the affirmative defense that Vanzant's claim is procedurally barred from federal habeas review because it was defaulted in state court.  Under the doctrine of procedural default, federal courts are precluded from "consider[ing] issues on habeas review that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *McCracken v. Gibson*, 268 F.3d 970, 976 (10th Cir. 2001) (internal quotation marks omitted).  "To

be independent, the procedural ground must be based solely on state law." *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (internal quotation marks omitted). To be adequate, a state procedural ground "must be strictly or regularly followed and applied evenhandedly to all similar claims." *Id.* (internal quotation marks omitted). Where, as here, the State has pleaded the affirmative defense of a state procedural bar, "the burden to place that defense in issue shifts to the petitioner," who must, at a minimum, provide "specific allegations . . . as to the inadequacy of the state procedure." *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999).

Vanzant first raised his claim of ineffective assistance of trial counsel in his application for postconviction relief. Dkt. No. 25-10 at 6-9, 17-20. In its order affirming the state district court's denial of the application, the OCCA found that Vanzant had waived his claim of ineffective assistance of trial counsel because it could have been raised on direct appeal. Dkt. No. 25-16 at 2-3 (citing Okla. Stat. tit. 22, § 1086 and *Logan v. State*, 293 P.3d 969 (Okla. Crim. App. 2013)); *see Grant v. Royal*, 886 F.3d 874, 901 (10th Cir. 2018) ("Under Oklahoma's Uniform Post-Conviction Procedure Act, 'only claims which were not and could not have been raised on direct appeal will be considered in post-conviction proceedings.'" (alterations and internal quotation marks omitted)). Oklahoma's waiver rule precluding postconviction relief for claims that could have been raised on direct appeal is both an independent and adequate state ground barring habeas review. *See Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999) ("Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground barring review of petitioner's . . . claim."). Accordingly, the Court is barred from considering Vanzant's claim of ineffective assistance of trial counsel unless Vanzant can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result

in a fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Vanzant argues that his appellate counsel's failure to raise the ineffective-assistance-of-trial-counsel arguments on direct appeal constitutes cause for the default. Dkt. No. 1 at 6; Dkt. No. 12 at 1-4. While "[a]ttorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default," the Court concludes, for the reasons discussed above, *see supra* Section III(A), that appellate counsel's omission of the arguments did not constitute an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Hickman v. Spears*, 160 F.3d 1269, 1272 (10th Cir. 1998); *Strickland*, 466 U.S. at 687. Accordingly, Vanzant has not shown cause for his procedural default in state court. *See Hickman*, 160 F.3d at 1273 ("Because the same legal standards govern petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, we must determine whether petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim."). Nor has Vanzant demonstrated a fundamental miscarriage of justice necessitating the Court's review, as he has not made a colorable showing of factual innocence. *See Hickman*, 160 F.3d at 1275.

For these reasons, the Court determines that it is barred from considering Vanzant's claim of ineffective assistance of trial counsel due to Vanzant's procedural default of the claim in state court.

### C.  Ground 3: Prosecutorial Misconduct

Vanzant next argues that prosecutorial misconduct deprived him of a fair trial. He alleges that the prosecutor:  (1) failed to produce Sean Lemley as a witness at trial; (2) commented during closing arguments that Vanzant had been "riding around with 'brain matter and blood' on his clothing;" (3) argued during closing arguments that Vanzant "pried [Kelsoe's] fingers from her

outstretched arm in order to take her ring;" (4) argued during closing arguments that there was a "breakdown in the relationship" between Vanzant and Kelsoe; (5) argued during closing arguments that Vanzant had a motive because he know the contents of Kelsoe's will; (6) commented during closing arguments that Vanzant was "a 'leech' and that he was unemployed;" (7) argued during closing arguments that Vanzant "failed to prove another person committed the crime" and that Vanzant "was required to provide evidence that someone else had committed [the] crime," thereby improperly shifting the burden of proof to Vanzant; and (8) improperly elicited "expert" opinion testimony from two State witnesses.  Dkt. No. 1 at 15.  Respondent argues that, apart from Vanzant's subclaim regarding alleged burden shifting, Vanzant's arguments are either procedurally barred pursuant to the OCCA's order denying postconviction relief or subject to an anticipatory procedural bar.  Dkt. No. 25, at 60.

On direct appeal, Vanzant claimed prosecutorial misconduct solely on the premise that the prosecutor improperly shifted the burden of proof with his comment that "the defense failed to prove another person, namely Ike Webster, killed Ms. Kelsoe."  Dkt. No. 25-2 at 31.  The OCCA rejected the claim:

> Vanzant argues he was denied a fair trial because of prosecutorial misconduct.  He claims the prosecutor, over objection, made comments that shifted the burden of proof to the defense, namely that the defense failed to prove his alternative suspect, Ike Webster, killed Kelsoe.  The district court overruled Vanzant's objection, finding the prosecutor's statement was simply his restatement of the defense's opening statement.
>
> This Court grants relief on claims of prosecutorial misconduct only when the misconduct effectively deprived the defendant of a fair trial or a fair and reliable sentencing proceeding.  *Harmon v. State*, 2011 OK CR 6, ¶ 80, 248 P.3d 918, 943.  In making that determination, we evaluate the prosecutor's comments within the context of the entire trial, "considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel."  *Id.*; *see also Brewer v. State*, 2006 OK CR 16, ¶ 13, 133 P.3d 892, 895 (reversal is not required unless in light of entire record defendant suffered prejudice).  It is the rare instance when a prosecutor's

misconduct during closing argument was so egregiously detrimental to a defendant's right to a fair trial that reversal is required. *See Pryor v. State*, 2011 OK CR 18, ¶ 4, 254 P.3d 721, 722.

Defense counsel offered the defense's theory of the case in opening statement. Counsel claimed the evidence would show that Vanzant was at his brother's place near Welty at the time of the murder. Despite phone records showing his phone in Welty, the evidence would show that law enforcement focused the investigation on Vanzant from the beginning and excluded Kelsoe's family. The evidence would further show that a rift had developed between Kelsoe and her two sisters over family business dealings and her relationship with Vanzant. Despite the animosity between Kelsoe and her sisters and the sisters' financial gain from her death, the police never seriously considered her family, specifically Ike Webster, because of the family's relationships with those in the fire and police departments. Defense counsel went on to explain that the jury would hear from the defense's expert arson investigator who concluded that Kelsoe's head was intentionally set on fire after the initial fire had been extinguished. According to defense counsel, only the real killer would have reason to set that fire and the evidence would establish beyond doubt that Vanzant could not have started that fire because he was not present.

During closing argument, defense counsel questioned the State's evidence and returned to the theory of defense outlined in opening statement. Counsel argued the more plausible view of the evidence showed that Ike Webster, seeing no cars and believing no one at home, broke into Kelsoe's home not to murder her but to take something, possibly cash or business papers. While inside, he unexpectedly encountered Kelsoe in her bedroom and shot her as she reached for the gun on her nightstand. A panicked Webster then set fires throughout the house to destroy any fingerprints or DNA he may have left because it had been years since he had been in Kelsoe's home. Webster fled to his nearby home and reappeared once fire fighters were on the scene. In the chaos, he slipped into the house unnoticed after the fire was under control and started the fire that engulfed Kelsoe's head.

The prosecutor responded in final closing argument. He countered that the evidence against Vanzant was conclusive and that the defense's alternative suspect theory was unsupported by the evidence. The prosecutor's argument, when read in context, was not an attempt to shift the burden of proof to the defense to prove someone else killed Kelsoe, but to challenge the defense's view of the evidence outlined in opening statement, advanced through direct and cross examination and repeated in closing argument. The argument falls within the wide latitude accepted by this Court. *See Pullen v. State*, 2016 OK CR 18, ¶ 13, 387 P.3d 922, 927 ("Both parties have wide latitude in closing argument to argue the evidence and reasonable inferences from it.")[.] We further note that Vanzant's jury was properly instructed on the evidence and the State's burden of proof. The district court did not err in overruling Vanzant's objection to the challenged argument.

Dkt. No. 25-1 at 8–11 (footnote omitted).

Because the OCCA adjudicated Vanzant's argument on the merits, this Court reviews the determination under the AEDPA's deferential standard.   The Court considers "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   "Inquiry into the fundamental fairness of a trial requires [courts] to examine the effect of any misconduct within the context of the entire proceedings."   *Duckett v. Mullin*, 306 F.3d 982, 988 (10th Cir. 2002).   This requires courts to "look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution."   *Id.* at 988-89 (internal quotation marks omitted).

In his closing argument, the prosecutor stated, "The defense has told you, 'We're going to show you that Ike [Webster] did it.   Ike's the killer.'   They told you that in opening statement. They told you they would prove to you that second fire was set on the head of Debbie Kelsoe." Dkt. No. 26-25 at 56-57.   This statement, in context, responds to the defense's theory.   Defense counsel advised the jury during her closing arguments that the State had the burden of proof, and the burden of proof was clearly defined in the court's instructions to the jury.   *Id.* at 48, 54; Dkt. No. 26-36 at 117 (jury instruction on presumption of innocence and burden of proof); *see Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (recognizing an "almost invariable assumption of the law that jurors follow their instructions").   The OCCA therefore was reasonable in concluding that the prosecutor's statement did not render Vanzant's trial fundamentally unfair.   Vanzant has not demonstrated that the OCCA's decision was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.   28 U.S.C. § 2254(d).

As to Vanzant's argument that the prosecutor improperly elicited "expert" testimony from

20

two State witnesses (argument 8), Respondent contends the argument is unexhausted and subject
to an anticipatory procedural bar.  Dkt. No. 25 at 93-96.  Vanzant did raise a claim on direct appeal
related to the alleged improper opinion testimony of two State witnesses, but the legal basis of the
claim was the "trial court's decision [not] to limit or exclude [the] evidence," not prosecutorial
misconduct.  Dkt. No. 25-2 at 33-34.  Because Vanzant did not provide the state court a fair
opportunity to analyze the argument under the legal principles applicable to prosecutorial
misconduct claims, the Court agrees that the argument is unexhausted.  *See Anderson v. Harless*,
459 U.S. 4, 6 (1982) (explaining that exhaustion requires that "a federal habeas petitioner . . .
provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts
bearing upon his constitutional claim"); *Grant*, 886 F.3d at 891 (explaining that a petitioner can
neither "assert entirely different arguments . . .  from those raised before the state court," nor "shift
the basis for [his or her] argument away from what was previously raised in state court" (internal
quotation marks omitted)).

The Court likewise agrees that the argument is subject to an anticipatory procedural bar.
If Vanzant were to return to state court to exhaust the claim, it would be barred under Oklahoma's
procedural rule precluding claims from postconviction review that could have been raised on direct
appeal.  Because Oklahoma's waiver rule is both an independent and adequate state ground barring
review, the Court is precluded from considering the argument absent a showing of either cause for
the default and actual prejudice, or a fundamental miscarriage of justice.  *See Sherrill*, 184 F.3d at
1175; *Coleman*, 501 U.S. at 750.  Vanzant does not appear to argue ineffective assistance of
appellate counsel as cause.  Dkt. No. 1 at 7-8.  Even if he had, Vanzant did not claim in state court
that appellate counsel was ineffective for its omission of the argument, so he cannot now assert
such a claim as cause.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("[A]n ineffective-

assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."). Nor has Vanzant made a colorable showing of actual innocence. The Court therefore concludes it is barred from reviewing Vanzant's argument that the prosecutor improperly elicited "expert" testimony from two State witnesses.

Respondent contends that the remaining arguments of prosecutorial misconduct are procedurally barred. Vanzant first raised these arguments in his application for postconviction relief. Dkt. No. 25-10, at 9-15. The OCCA rejected the claims as waived pursuant to Oklahoma's procedural rule barring claims from postconviction review that could have been raised on direct appeal. Dkt. No. 25-16, at 2-3; *see Grant*, 886 F.3d at 901. Because Oklahoma's waiver rule is an independent and adequate state bar to review, Vanzant again must establish either cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar. *See Coleman*, 501 U.S. at 750. Insofar as Vanzant seeks to assert ineffective assistance of appellate counsel as cause for the omission of these arguments on direct appeal, he fails to demonstrate deficient performance or prejudice because the underlying arguments lack merit.

The Court has already determined that Vanzant's trial was not rendered fundamentally unfair by the prosecutor's arguments that Vanzant may have had blood and brain matter on his clothing, that he pulled Kelsoe's ring from her finger, and that he had a motive for killing Kelsoe because he knew the contents of her will (arguments 2, 3, and 5). *See supra* Section III(A)(6). Similarly, Vanzant's remaining arguments of prosecutorial misconduct (arguments 1, 4, and 6) lack merit. The record reflects that the State made several unsuccessful attempts, through law enforcement, to locate Sean Lemley for trial. Dkt. No. 26-36 at 25-27. Vanzant does not explain why these efforts were insufficient or why his trial was rendered fundamentally unfair by the absence of Lemley's proposed testimony of Vanzant's alleged confession. Regarding the

prosecutor's alleged comments that Vanzant was unemployed and a "leech" and that his relationship with Kelsoe had broken down, Respondent contends that the prosecutor did not make these statements. Dkt. No. 25 at 82-83, 90. Instead, Respondent claims, the comments are found in the State's brief on direct appeal. *Id.* Vanzant does not contest Respondent's argument, and a review of the closing arguments and the State's brief on direct appeal support Respondent's contentions. Even if the prosecutor had made the comments to the jury, it is highly implausible they would have been a determining factor in the outcome of the trial, given the strength of the evidence against Vanzant. *See Duckett*, 306 F.3d at 988-89.

Appellate counsel is not ineffective for failing to raise meritless arguments. Accordingly, Vanzant has not established ineffective assistance of appellate counsel as cause for the procedural default of these six prosecutorial misconduct arguments. Because Vanzant also has failed to demonstrate a colorable showing of actual innocence, his defaulted arguments are not reviewable under the fundamental-miscarriage-of-justice exception. The procedural bar therefore precludes federal habeas review.

### D.  Ground 4: Cumulative Error

Vanzant next submits that the "accumulative effect of the many errors in this case deprived [him] of a fair trial." Dkt. No. 1 at 8-9, 16; Dkt. No. 12 at 3. "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002) (internal quotation marks omitted). The cumulative error analysis, however, applies "only upon a showing of at least two actual errors." *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015). As Vanzant has not shown two or more actual errors, his cumulative error argument is without merit. *See Alverson v. Workman*, 595 F.3d

1142, 1162 (10th Cir. 2010) ("Because we have rejected each of [the petitioner's] substantive claims of constitutional error, there can be no cumulative error.").

### E.  Ground 5: Sufficiency of the Evidence

Vanzant contends in Ground 5, as he did on direct appeal, that the State presented insufficient evidence to support his conviction.  Dkt. No. 1 at 10, 17; Dkt. No. 12 at 3.  Vanzant argues that the case against him was "based on circumstantial evidence from videos and questionable time frames."  Dkt. No. 1 at 17.  He argues that the video evidence was "grainy or blurry" and that the State "prejudiced" the jury against him with "time frames and other evidence that had been manipulated or tampered with by the District Attorney."  *Id.*  The OCCA rejected Vanzant's challenge to the sufficiency of the evidence on direct appeal, finding that any rational trier of fact presented with the evidence could find Vanzant guilty beyond a reasonable doubt:

> Vanzant argues he is entitled to reversal of his first degree murder conviction because the trial evidence was insufficient, as a matter of law, to support it.  The State's evidence against Vanzant was circumstantial and he claims that the evidence failed to prove he murdered Kelsoe or disprove that he was at his brother's home in Welty when Kelsoe was murdered.  He contends the case against him represents "a rush to judgment by a family who disliked" him and "by law enforcement who failed to meaningfully investigate anyone other than" him.  *Appellant's Brief* at 22. We disagree.
>
> Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, any rational trier of fact could find the defendant guilty beyond a reasonable doubt.  *Coddington v. State*, 2006 OK CR 34, ¶ 70, 142 P.3d 437, 456; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04.  This Court does not reweigh conflicting evidence or second-guess the fact-finding decisions of the jury; we accept all reasonable inferences and credibility choices that tend to support the verdict.  *See Day v. State*, 2013 OK CR 8, ¶ 12, 303 P.3d 291, 298; *Coddington*, 2006 OK CR 34, ¶ 70, 142 P.3d at 456.  We further recognize that the law makes no distinction between direct and circumstantial evidence and either, or any combination of the two, may be sufficient to support a conviction.  *Miller v. State*, 2013 OK CR 11, ¶ 84, 313 P.3d 934, 965.  "Pieces of evidence must be viewed not in isolation but in conjunction, and we must affirm the conviction so long as, from the inferences reasonably drawn from the record as a whole, the jury might fairly have concluded the defendant was guilty beyond a reasonable doubt."  *Matthews v. State*, 2002 OK CR 16, ¶ 35, 45

P.3d 907, 919-20.

Reasonable inferences drawn from the evidence sufficiently proved beyond a reasonable doubt that Vanzant was Kelsoe's killer. Kelsoe was murdered between 10:00 p.m. August 13, 2012 and 3:15 a.m. August 14, 2012. It was undisputed that Vanzant drove to his brother's home near Welty on August 13, 2012, in Kelsoe's Eddie Bauer edition Ford Bronco, and arrived somewhere around 6:30 p.m. Under the State's theory, Vanzant spent the evening with his brother, Larry Vanzant, until bedtime, drove to Kelsoe's home and killed her for the inheritance and then returned to Welty. According to Larry Vanzant, he last saw his brother around 11:30 p.m. on August 13th and could not account for his whereabouts until 4:30 to 5:00 a.m. the next morning.

The evidence showed Vanzant deviated from his ordinary travel habit the evening before Kelsoe's murder. Instead of his truck, he drove to his brother's home in Kelsoe's Ford Bronco. He parked his flatbed truck in the shed instead of its usual spot at the house, making it appear as if no one was home. When he arrived the next morning after hearing that Kelsoe had been killed, Vanzant acted strangely; he did not appear distraught but was detached, nervous and fidgety. He stayed at the scene only a few minutes and left to go check on his boat in Muskogee, run errands and get food. He did not return or have further contact with Kelsoe's family that day.

Vanzant told police that only he and Kelsoe knew the home's alarm code; the system showed that the alarm was disarmed at 12:39 a.m. on August 14, 2012. Furthermore, Vanzant knew he was the sole beneficiary under Kelsoe's will. He later relinquished his rights under the will in hopes that the police would stop pursuing him as a suspect. The insurance adjuster at Kelsoe's home on August 21, 2012, to inventory and make a determination of damage and property loss, testified that Vanzant came by to identify property and gather some belongings. After Vanzant left, his cat that had been missing since Kelsoe's murder appeared. The adjuster saw a pet carrier on the patio that she had not noticed during her previous two visits to the home. The appearance of Vanzant's cat a week after the fire, along with the pet carrier, tended to show that the cat had been taken away and returned, the inference being Vanzant took his cat so it would not perish in the fire that he had set to conceal Kelsoe's murder.

The State presented a still photograph taken from the Dewar City Hall security camera video of a sport utility vehicle, like Kelsoe's, driving past the Dewar City Hall at 3:41 a.m. on August 14, 2012, heading toward Welty. Surveillance camera footage from Larry Vanzant's neighbor showed an unidentifiable vehicle passing by at approximately 4:23 a.m. headed toward Larry Vanzant's property. Larry Vanzant also admitted telling an agent with the Oklahoma State Bureau of Investigation (OSBI) that Vanzant said the police had a photograph of Kelsoe's Bronco.

Kelsoe's large diamond ring, a ring that she always wore and was seen wearing the afternoon before her murder, was not on her finger or in her home after her death. Two months later, Vanzant inexplicably found the ring on his boat in Muskogee. Still other evidence showed that Vanzant tried to get a former McIntosh County Jail inmate by the name of Israel Blakely to provide him with an alibi for the morning of the murder. Using the name Austin Shanks, who was also an inmate in the McIntosh County Jail at that time, Vanzant wrote Blakely a letter outlining a fictional story about Shanks and Blakley [sic] fishing near Welty and finding a man sleeping in a Ford Bronco around 2:00 a.m. on August 14, 2012, the inference being that the two encountered Vanzant in Welty around the time of the murder. Vanzant's attempt to create an alibi through jail inmates evidenced a consciousness of guilt.

Based on the evidence presented at trial, the jury reasonably concluded that Vanzant drove back from his brother's house in the middle of the night and shot Kelsoe in the head. To conceal the crime, he set multiple fires inside the house. Vanzant understandably takes issue with the inferences drawn by the jury concerning the evidence. The defense, however, placed alternative inferences supporting reasonable doubt squarely before Vanzant's jury and the jury rejected those inferences. Because the evidence was sufficient for any rational trier of fact to find that Vanzant murdered Kelsoe beyond a reasonable doubt, this claim is denied.

Dkt. No. 25-1 at 4-8 (footnote omitted).

When reviewing the sufficiency of the evidence supporting a state criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "A sufficiency-of-the-evidence challenge in a habeas petition presents a mixed question of fact and law," requiring the Court to determine "whether the facts are correct and whether the law was properly applied to the facts." *Hooks v. Workman*, 689 F.3d 1148, 1165 (10th Cir. 2012) (internal quotation marks omitted). Thus, the Court "appl[ies] both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiently of the evidence on habeas." *Id.* (quoting *Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008)). Under § 2254(d)(1), the Court "ask[s] whether the OCCA correctly identified the governing legal principle from *Jackson* and reasonably applied it to the facts of [Vanzant's] case."

*Id.* at 1167.  Under § 2254(d)(2), the Court asks whether the state court "plainly and materially misstated the record" or whether the petitioner has "show[n] that reasonable minds could not disagree that the finding was in error."  *Smith v. Sharp*, 935 F.3d 1064, 1072 (10th Cir. 2019) (internal quotation marks omitted).

Vanzant has not shown that the OCCA's rejection of his challenge to the sufficiency of the evidence was "contrary to" or "an unreasonable application of" *Jackson*, or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Even if the Court were to accept Vanzant's characterization of the video footage and photographs of the vehicle as "grainy or blurry," other evidence supported the finding that the vehicle was Kelsoe's Ford Bronco.  Vanzant's brother testified that the vehicle "looked like the one [Kelsoe] had" and that Vanzant told him the police had "a picture of the Bronco."  Dkt. No. 26-20 at 32-36.  Further, as thoroughly outlined by the OCCA, the jury was presented with ample evidence supporting the finding of Vanzant's guilt other than the videos and photographs.  In view of the evidence, the Court concurs with the OCCA that any rational trier of fact could have found beyond a reasonable doubt that Vanzant murdered Kelsoe, and that he did so with malice aforethought.  *See* Okla. Unif. Jury Instr. CR 4-61.  Accordingly, relief is not warranted on this claim.

## IV.    CONCLUSION

Based on the foregoing, the Court denies Vanzant's petition for a writ of habeas corpus [Dkt. No. 1].  Under Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner

satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that the requisite standards have not been met in this case and therefore declines to issue a certificate of appealability.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. the Clerk of Court shall note on the record the substitution of David Rogers in place of Scott Crow as party respondent;

2.  the petition for writ of habeas corpus [Dkt. No. 1] is DENIED; and

3. a certificate of appealability is DENIED.

Dated this 1st day of April 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE